UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THERESE BURKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:22-CV-405-HAB |
| | ) |
| THE HERITAGE CORP., et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff discovered too late that her deceased husband failed to convert his group life insurance policy to an individual one. She now seeks to hold his former employer and the life insurance company responsible for that failure, claiming that each breached its fiduciary duty owed under the Employee Retirement Income Security Act ("ERISA"). Defendant The Heritage Group ("THG"), the husband's former employer, has moved to dismiss the case. (ECF No. 50). That motion is now fully briefed (ECF Nos. 51–53) and ripe for ruling.

**I.   Well-Pleaded Facts**

In line with the standard of review, the Court accepts these facts from Plaintiff's Amended Complaint as true. Plaintiff's late husband, Norman Burkett ("Burkett"), was employed by THG for forty-six years. During that employment, Burkett enrolled in THG's group life insurance policy, the Life Plan, with a $300,000.00 death benefit. Defendant Unum Life Insurance Company of America ("Unum") administered the Life Plan.

The Summary Plan Document ("SPD") for the Life Plan is attached to the Complaint. Relevant here, the SPD provides that participants in the Life Plan can elect to convert coverage to an individual life policy if their employment is terminated. The application for the conversion is

due 31 days after the date of termination. Participants are directed to "[a]sk your Employer for a conversion application form," which the participant then completes and sends to Unum with a check for the first premium. (ECF No. 45-1 at 30).

In July 2019, Burkett was diagnosed with a malignant brain tumor. He was placed on long term disability in November of that year.

In December 2019, Unum sent a letter ("Letter") to Burkett's home. The Letter informed Burkett that he was no longer covered by the group life insurance policy. But the Letter also told Burkett that he could convert the group life insurance policy to a whole life insurance policy within ninety days of the end of his group life coverage. The Letter stated, "if you are interested in the Portability or Conversion options please contact the Unum Client Service Center at 1-866-220-8460 to obtain the required election form." (ECF No. 45-2 at 1).

Burkett did not receive the Letter because he was hospitalized when it was delivered. Instead, Burkett contacted THG in January 2020 to ask questions about his life insurance. Sara Pieroni ("Pieroni"), a THG HR administrator, exchanged several emails with Burkett. In the first email, which is excerpted in the complaint but not attached, Pieroni told Burkett, "Company paid life insurance ends at the end of 6 months of a leave. You should have received a letter from Unum to continue the coverage by paying the premiums directly to Unum. It was called a Port and Convert. I am asking Unum for a copy of it."

Three days later, Pieroni sent a second email with more information. That email stated:

> We heard back from Unum and there isn't any provision with us that says when you become disabled that your life insurance would be paid out. To have continued your insurance Unum mailed you information on 12/4/2019 and you have 30 days to respond. Please let us know if there is anything else we can answer and I wish I could be more help. I tried calling but call me if you have questions.

Three days after that Pieroni sent a third email, this time attaching the Letter. She corrected the information in her prior email by telling Burkett that he had 90 days from his termination date[1] to convert his life insurance to an individual policy. She concluded that email by stating "please call Unum with any additional questions."

Burkett never contacted Unum. In April 2020 he succumbed to his illness. It was only after Plaintiff tried to collect the death benefit that she learned that the conversion process was never completed.

Plaintiff's complaint alleges two counts, one each against THG and Unum. Relevant here, Plaintiff alleges that THG breached its duty as an ERISA fiduciary by: "(a) providing misleading information to [Burkett] in response to his inquiry in January 2020 regarding portability of the Life Plan and the election form, (b) failing to complete and submit [Burkett's] election form to port the Life Plan; and (c) related acts and omissions."

## II.      Legal Discussion

### A.      *Motion to Dismiss Standard*

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads

---

[1] The parties seem to agree that the deadlines for conversion of the policy began to run on the date Burkett was placed on long term disability.

3

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B.      *Breach of Fiduciary Duty Under ERISA***

The parties agree that, to state a claim for breach of fiduciary duty under ERISA, Plaintiff must plead: (1) that Defendants are plan fiduciaries; (2) that Defendants breached their fiduciary duties; and (3) that the breach harmed Plaintiff. *Kamler v. H/N Telecomm. Serv., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002). THG concedes that it was a plan fiduciary. But, it argues, it neither breached its fiduciary duties nor did Plaintiff suffer any harm because of its alleged wrongdoing.

In her Amended Complaint and briefing, Plaintiff alleges several bases for her fiduciary duty claim. She argues that Pieroni gave misleading information in her second email when she stated that Burkett had thirty days to initiate the conversion process—a deadline that had expired. She also argues that THG had a duty to initiate the conversion process on Burkett's behalf after his inquiries. Finally, she argues that the entire conversion process was confusing and unreasonable.

**1.      *The Amended Complaint Fails to Allege a Breach of a Fiduciary Duty Based on Pieroni's Emails***

Addressing Pieroni's email, THG relies on *Vallone v. CNA Fin. Corp.*, 375 F.3d 623 (7th Cir. 2004). There, the Seventh Circuit held that "while there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable. That is why the employer must have set out to disadvantage or deceive its employees . . . in order for a breach of fiduciary duty to be made out." *Id*. at 642. Because Plaintiff alleged that the misstatement resulted from "confusion as to the mechanics of the conversion process," (ECF No. 45 at 4), THG argues that the required intent is missing.

4

In response, Plaintiff asserts that "the *Vallone* court did not hold that an intent to deceit (sic) was required for a breach of fiduciary duty claim . . .; instead, the court held that evidence that the fiduciaries intended to mislead the participants *can* establish a violation of the duty of loyalty." (ECF No. 52 at 4) (citations omitted) (original emphases). This is exactly wrong. Indeed, the Seventh Circuit has affirmed that *Vallone* "held . . . that a breach of fiduciary duty claim premised on a misstatement **requires an intent to deceive**." *Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459, 466 (7th Cir. 2005) (emphasis added); *Baker v. Kingsley*, 387 F.3d 649, 661–62 (7th Cir. 2004). Plaintiff has not alleged an intent to deceive. Instead, by alleging that Pieroni's statements resulted from "confusion," she has alleged the opposite. At most, then, the Amended Complaint alleges a negligent misstatement, and that is not actionable under ERISA. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007) ("An ERISA plan fiduciary does not breach its fiduciary duties under ERISA by merely providing negligent misinformation about the contours of a Plan.").

**2.** *The Amended Complaint States a Claim for Breach of Fiduciary Duty for THG's Failure to Obtain the Conversion Application*

Moving on, Plaintiff next claims that THG had an affirmative duty to take a more active role in the conversion process. As the theory goes, THG knew that Burkett had brain cancer and therefore was unlikely to initiate the conversion process on his own. Because of his call to THG, it also knew that he wanted to convert the policy. Armed with this knowledge, THG should have contacted Unum and made sure that Unum provided Burkett with the conversion form. In any event, Plaintiff claims that the whole conversion process was confusing, and that this confusion placed another duty on THG to begin the process.

The Seventh Circuit has held that a review of the plan documents is often vital when determining whether a breach of fiduciary duty has occurred under ERISA.

5

> If the plan documents are clear and the fiduciary has exercised appropriate oversight over what its agents advise plan participants and beneficiaries as to their rights under those documents, the fiduciary will not be held liable simply because a ministerial, non-fiduciary agent has given incomplete or mistaken advice to an insured. Nevertheless, if a fiduciary supplies participants and beneficiaries with plan documents that are silent or ambiguous on a recurring topic, the fiduciary exposes itself to liability for the mistakes that plan representatives might make in answering questions on that subject.

*Killian v. Concert Health Plan*, 742 F.3d 651, 665 (7th Cir. 2013) (citations and quotations omitted).

The documents attached to the Amended Complaint show not just ambiguity, but conflict on how a participant obtains a conversion application. The SPD directed Burkett to contact THG to obtain the application. But when he did so, THG told Burkett to call Unum, and provided him with a letter with similar instructions. It is impossible to say, based on the pleadings, which set of instructions was correct. The Court cannot say, then, that THG fulfilled its fiduciary duty when it sought to shuffle him off to Unum.

THG seeks to avoid liability by arguing "ERISA does not require plan administrators to investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees." (ECF No. 51 at 11) (quoting *Chojnacki v. Georgia- Pac. Corp.*, 108 F.3d 810, 817–18 (7th Cir. 1997). This is a correct statement of the law, but it's hard to see how it applies here. The issue is not THG's lack of investigation; the issue is that THG and Unum gave Burkett conflicting information. At least at the pleading stage, the Court cannot say that Plaintiff has no cause of action when Burkett did exactly what SPD told him to do.

There may be a reasonable explanation why the information Burkett received from THG and Unum after taking disability was different from the information in the SPD. But, as noted above, on a motion to dismiss the Court does not weigh the merits of a case. The Court's only task is to determine whether Plaintiff has pled enough facts to state a claim. Viewing the facts and the

attachments in a light most favorable to Plaintiff, as the Court must, Plaintiff has cleared this low bar regarding THG's failure to obtain the conversation application on Burkett's behalf.

**3.**     *Plaintiff has Pled Causation*

Finally, THG argues that its conduct cannot be viewed as the cause of Plaintiff's damages because Burkett never followed directions and contacted Unum. THG relies on *Kamler*, where the Seventh Circuit concluded that a plan participant had failed to show a breach of fiduciary duty when he was mistakenly assured that he was automatically covered under his employer's health insurance plan. In fact, as the plan documents made it "abundantly clear," a participant's enrollment in the plan was a requirement of coverage. *Kamler*, 305 F.3d 682. Because of the clear plan document language, the employer "had no duty to emphasize something that had already been clearly communicated." *Id*. Instead, the Seventh Circuit found that he could only state a claim for breach of fiduciary duty if he had enrolled but incurred some uncovered expense prior to his date of enrollment. *Id*.

This case is distinguishable from *Kamler*, at least at this point, because the SPD was not "abundantly clear" when compared to the information THG and Unum provided in response to Burkett's inquiries. Instead, the SPD gave information contrary to the position THG takes now. The Court has little trouble concluding that, if THG's failure to provide the conversion application was a breach, then Plaintiff's inability to obtain the death benefit was proximately caused by that breach.

**III.    Conclusion**

For these reasons, Defendant's Motion to Dismiss (ECF No. 50) is GRANTED in part and DENIED in part. The motion is GRANTED with respect to Plaintiff's claim for breach of fiduciary

7

duty arising out of Pieroni's incorrect recitation of the application deadline. The motion is DENIED in all other respects.

SO ORDERED on July 18, 2023.

                                           s/ *Holly A. Brady*
                                           JUDGE HOLLY A. BRADY
                                           UNITED STATES DISTRICT COURT